UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRIAN W. TECKENBROCK,

    Plaintiff,

    v.                                  CAUSE NO. 3:25-CV-462 DRL-SJF

WESTVILLE CORRECTIONAL
FACILITY *et al.*,

    Defendants.

OPINION AND ORDER

Brian W. Teckenbrock, a prisoner without a lawyer, filed a complaint and a motion seeking a preliminary injunction. ECF 2; ECF 6. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Teckenbrock alleges that, on the morning on April 11, 2025, an inmate woke him up and told him to get his things and get out of his bunk because one of the inmate's affiliated brothers was sleeping on the floor and needed Mr. Teckenbrock's bunk. Another inmate with the nickname of "Byrd" told Mr. Teckenbrock that he would smack

him if he didn't hurry up. Mr. Teckenbrock went to the restroom and returned to pack his property. While he was packing, Byrd punched Mr. Teckenbrock repeatedly.

After the assault, Mr. Teckenbrock went to the cage where an officer was stationed. Officer Mase was present, and Mr. Teckenbrock said, "this is bull crap I get assaulted for my bunk at 8 o'clock in the morning." ECF 1 at 3. Officer Mase told Mr. Teckenbrock to put his stuff outside the cage, "be cool," and it would be okay. *Id.* Inmates surrounded Mr. Teckenbrock and told him to shut up. Mr. Teckenbrock believed the inmates had weapons, so he shut up and began crying. Deputy Mase didn't call a signal or request backup. Mr. Teckenbrock was dizzy and had a headache. He asserts that Deputy Mase knew he had been assaulted because he told him he had been assaulted when he approached the cage and because he had lumps on his head. Mr. Teckenbrock is suing Officer Mase for deliberate indifference to both his safety and his medical needs.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Exercis[ing] poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of serious

2

harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

Here, the complaint doesn't allege that Deputy Mase had any information suggesting that Mr. Teckenbrock would be attacked before he was assaulted. Therefore, he can't state a claim against Deputy Mase for failing to prevent the April 11, 2025 attack. To the extent Mr. Teckenbrock may be suing Deputy Mase for failing to call a signal or seek backup assistance when inmates surrounded Mr. Teckenbrock, he can't proceed because he doesn't allege that he was attacked after he made Deputy Mase aware of his concerns. Mere fear of an attack that doesn't occur doesn't state a claim for monetary damages. *See Doe v. Welborn*, 110 F.3d 520, 523–24 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause." (quotations and citation omitted)).

Mr. Teckenbrock's claim that Deputy Mase was deliberately indifferent to his need for medical care fares no better. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space

slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

Here, Mr. Teckenbrock only said "this is bull crap I get assaulted for my bunk at 8 o'clock in the morning." ECF 2 at 3. Mr. Teckenbrock does not allege that he described the nature of the assault, asked for medical care, or otherwise put Deputy Mase on notice that he had a serious medical need. Mr. Teckenbrock says that there were lumps on his head, but it can't be plausibly inferred that Deputy Mase would have known this without Mr. Teckenbrock bringing them to his attention. Though Mr. Teckenbrock may have had a serious medical need, he hasn't pleaded facts from which it can be plausibly inferred that Deputy Mase knew of his medical needs or was deliberately indifferent to them.

After the shift change, Mr. Teckenbrock communicated his need for help by sending a message on his tablet. The next night, around midnight, Lieutenant Rojo asked Mr. Teckenbrock if everything was okay. Mr. Teckenbrock indicated that he didn't want to talk until he was out of the dorm because he was scared. He was taken to the lieutenant's office where an unknown officer was present. Mr. Teckenbrock told Lieutenant Rojo everything. Lieutenant Rojo asked if he was "checking in." *Id.* at 5. Mr. Teckenbrock didn't want to be labeled a "check in" but he was told that he would be returned to the dorm if he didn't check in. So, Mr. Teckenbrock checked in. Mr.

4

Teckenbrock was told to go get his things with the unknown officer. Mr. Teckenbrock was afraid to return to get his things, even with the officer. He was told he had to go back in if he wanted his property. He obtained his property without incident. The property was placed inside the deputy's station, and he was placed in a holding cell.

Mr. Teckenbrock argues that Lieutenant Rojo was deliberately indifferent to his safety by requiring him to reenter the dorm to get his property. As already explained, exposing an inmate to a risk of violence that doesn't occur doesn't state a claim. *See Doe*, 110 F.3d at 523–24.

Mr. Teckenbrock was taken to the medical department around 1:30 a.m. He told the nurse that he was in pain and had been throwing up all night. He received a shot for pain and a shot for nausea. She told him that if he continued to have problems to submit a request for sick call. He was returned to the holding cell, where he remained until approximately 8:00 am. The holding cell didn't have a bathroom.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Spending a handful of hours on a single night in a cell without a toilet doesn't implicate Eighth Amendment concerns.

At 8:00 a.m., Sgt. Smith came to move Mr. Teckenbrock to a new dorm. He was anxious about being in this dorm because it is just around the corner from the dorm where she was assaulted. To get his medication, he had to walk to an area which is right by the dorm where he was assaulted. Mr. Teckenbrock skipped his medication for several weeks to avoid running into anyone in that dorm and getting assaulted again.

He made a request on the tablet to go to protective custody because he continued to see the person who assaulted him, and he was worried he wasn't safe in the new dorm. It's unclear if he received a response.

Mr. Teckenbrock requested sick call due to continued headaches and dizziness. He was referred to the doctor, although at the time he filed his complaint he hadn't yet been seen. But, on May 1, 2025, he was seen by a nurse for a chronic care condition. She felt that Mr. Teckenbrock had suffered a concussion and ordered a CT scan. Mr. Teckenbrock asked the nurse to have him moved, but she said she didn't have authority to move him.

On May 18, 2025, Mr. Teckenbrock filed a grievance asking to be moved out of Westville. He also asked that the man who assaulted him be charged and that the CT scan that was ordered be performed. It's unclear if he received a response to the grievance.

Mr. Teckenbrock indicates he is unhappy with the medical care he has received, but he has named only Deputy Mase, Lieutenant Rojo, and the Westville Correctional Facility as defendants. Neither Deputy Mase nor Lieutenant Rojo was responsible for the quality of medical care Mr. Teckenbrock received. Furthermore, the Westville Correctional Facility is a building. It is a building, not a "person" or policymaking body

that can be sued for constitutional violations under 42 U.S.C. § 1983. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

Mr. Teckenbrock asks that the individual who attacked him be charged, but he doesn't have a constitutional right to force an investigation of the alleged wrongdoing. *See e.g. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General."); *see also Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction").

Finally, Mr. Teckenbrock seeks a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the complaint doesn't state a claim, the plaintiff cannot demonstrate a reasonable likelihood of success on the merits.

As explained, this complaint doesn't state a claim for which relief can be granted. If Mr. Teckenbrock believes he can state a claim based on (and consistent with) the events

7

described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library.[1] He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Brian W. Teckenbrock until **July 25, 2025**, to file an amended complaint; and

(2) CAUTIONS Brian W. Teckenbrock that, if he doesn't respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint doesn't state a claim for which relief can be granted.

SO ORDERED.

June 27, 2025                                                     *s/ Damon R. Leichty*
                                                                  Judge, United States District Court

---

[1] Pursuant to N.D. Ind. L.R. 7-6, Mr. Teckenbrock must use this court's prisoner complaint form.